# United States Court of Appeals for the Federal Circuit

FUSONG JINLONG WOODEN GROUP CO., LTD.,
FUSONG QIANQIU WOODEN PRODUCT CO., LTD.,
DALIAN QIANQIU WOODEN PRODUCT CO., LTD.,
YIHUA LIFESTYLE TECHNOLOGY CO., LTD.,
HUZHOU CHENGHANG WOOD CO., LTD.,
HANGZHOU HANJE TEC CO., LTD., HUNCHUN
XINGJIA WOODEN FLOORING INC., DUNHUA
SHENGDA WOOD INDUSTRY CO., LTD.,
ZHEJIANG FUERJIA WOODEN CO., LTD., A&W
(SHANGHAI) WOODS CO., LTD., DUN HUA SEN
TAI WOOD CO., LTD., ZHEJIANG DADONGWU
GREENHOME WOOD CO., LTD., SINO-MAPLE
(JIANGSU) CO., LTD., JILIN FOREST INDUSTRY
JINQIAO FLOORING GROUP CO., LTD., BAISHAN
HUAFENG WOODEN PRODUCT CO., LTD.,
METROPOLITAN HARDWOOD FLOORS, INC.,
NAKAHIRO JYOU SEI FURNITURE (DALIAN) CO.,
LTD., SHENYANG HAOBAINIAN WOODEN CO.,
LTD., COHESION TRADING LTD., MGI
INTERNATIONAL, MOBETTA TRADING LTD.,
LINYIANYING WOOD CO., LTD., LINYI YOUYOU
WOOD CO., LTD., SCHOLAR HOME (SHANGHAI)
NEW MATERIAL CO., LTD., LUMBER
LIQUIDATORS SERVICES, LLC, BENXI WOOD
COMPANY, DALIAN JIAHONG WOOD INDUSTRY
CO., LTD., DALIAN KEMIAN WOOD INDUSTRY
CO., LTD., DONGTAI FUAN UNIVERSAL
DYNAMICS, LLC, HAILIN LINJING WOODEN
PRODUCTS CO., LTD., JIANGSU GUYU
INTERNATIONAL TRADING CO., LTD., JIANGSU
MINGLE FLOORING CO., LTD., JIANGSU SIMBA
FLOORING CO., LTD., JIASHAN HUIJIALE

**DECORATION MATERIAL CO., LTD., KEMIAN WOOD INDUSTRY (KUNSHAN) CO., LTD., SUZHOU DONGDA WOOD CO., LTD., TONGXIANG JISHENG IMPORT AND EXPORT CO., LTD., BENXI WOOD, ET AL.,  STRUXTUR, INC., EVOLUTIONS FLOORING, INC.,**
*Plaintiffs*

**GALLEHER CORP., GALLEHER, LLC, WEGO INTERNATIONAL FLOORS LLC,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING,**
*Defendant*

————————————

2025-1196

————————————

Appeal from the United States Court of International Trade in No. 1:19-cv-00144-RKE, Senior Judge Richard K. Eaton.

————————————

Decided:  August 11, 2026

————————————

BRITTNEY RENEE POWELL, Fox Rothschild LLP, Washington, DC, argued for plaintiffs-appellants.  Also represented by LIZBETH ROBIN LEVINSON.

BRENDAN DAVID JORDAN, Commercial Litigation

Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by TARA K. HOGAN, PATRICIA M. MCCARTHY, BRETT SHUMATE; DANIELLE V. COSSEY, Office of the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce, Washington, DC.

_____

Before PROST, TARANTO, and CUNNINGHAM, *Circuit Judges*.

PROST, *Circuit Judge*.

Wego International Floors LLC, Galleher Corp., and Galleher, LLC (together, "Appellants") appeal from a final order of the Court of International Trade ("Trade Court") setting antidumping duties for multilayered wood flooring imported from the People's Republic of China. *Fusong Jinlong Wooden Grp. Co. v. United States*, 732 F. Supp. 3d 1333 (Ct. Int'l Trade 2024) ("*Final Decision*"). Because we deem Appellants' arguments on appeal forfeited, we affirm.

## BACKGROUND

This case unfolds from the U.S. Department of Commerce's ("Commerce") sixth administrative review of an antidumping-duty order covering the period of December 1, 2016, through November 30, 2017. *Id.* at 1335 n.2. The Trade Court ultimately sustained Commerce's redetermination of the "separate rate" applicable to certain companies, other than the mandatory respondents, that demonstrated independence from the Chinese government.[1] *Id.* at 1336. Appellants challenge Commerce's determination of the separate rate.

_____

[1] In an administrative review, Commerce generally determines the separate dumping margin applicable to el-

4          FUSONG JINLONG WOODEN GROUP CO., LTD. v. US

As relevant here, Commerce individually investigated two exporters of subject goods, Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. ("Senmao") and Sino-Maple (Jiangsu) Co., Ltd. ("Sino-Maple"), which it identified as mandatory respondents, and determined their dumping margins. Those margins were 0% for cooperating respondent Senmao and 85.13% for noncooperating respondent Sino-Maple, the latter of which was based on adverse facts available ("AFA"). *Fusong Jinlong Wooden Grp. Co. v. United States*, 617 F. Supp. 3d 1221, 1231–33 (Ct. Int'l Trade 2022) ("*Fusong I*").

As for the so-called separate rate companies, Commerce initially determined their rate as a simple average of the mandatory respondents' rates, 0% and 85.13%, yielding a rate of 42.57%. *Id.* at 1233. Numerous plaintiffs filed motions for judgment on the agency record ("MJAR"). *Id.* at 1225–27. One of the MJARs, filed by Appellants, argued: (1) Commerce's inclusion of Sino-Maple's AFA rate in its calculation of the separate rate was improper; (2) performing a simple average was unreasonable under 19 U.S.C. § 1673d(c)(5)(B); and (3) the separate rate of 42.57% did not reasonably reflect Appellants' potential dumping margins. J.A. 125–47. Woven throughout their arguments, Appellants contended that Commerce's alleged errors resulted in the separate rate being "aberrational," a term that Appellants used repeatedly in their briefing but did not define. *E.g.*, Appellants' Br. 13, 23, 24; Reply Br. 13, 14, 15, 17, 20, J.A. 126, 133, 138, 139, 144, 146.

Addressing the MJARs together, the Trade Court issued an opinion and order deciding numerous issues while

---

igible non-individually examined respondents in a nonmarket economy (like China) along the same lines as the "all others rate" under 19 U.S.C. § 1673d(c)(5). *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1374 (Fed. Cir. 2013); *see* 19 C.F.R. § 351.109(f)(1)–(2), (g).

reserving decision on others. *Fusong I*, 617 F. Supp. 3d at 1227 & n.8. Based on other plaintiffs' arguments, the Trade Court remanded for Commerce to reconsider its calculation of Sino-Maple's AFA rate of 85.13%. *Id.* at 1243–46. As to Appellants' specific arguments, the Trade Court determined that the issues of (1) "Commerce's inclusion of Sino-Maple's AFA rate in the calculation"; (2) Commerce's method of averaging under § 1673d(c)(5)(B); and (3) "whether the separate rate is aberrational and not reflective of the separate rate respondents' potential dumping margins" were "contingent upon" any redetermination of Sino-Maple's rate on remand, and therefore "reserve[d] decision" on those issues. *Id.* at 1227 n.8.

The government moved for reconsideration on the remanded issue (i.e., whether Commerce's method for selecting the AFA rate was proper), which the Trade Court granted. *See Final Decision*, 732 F. Supp. 3d at 1336. In so doing, the Trade Court had stated that a subsequent opinion addressing further issues would be forthcoming. In that subsequent opinion, the Trade Court took up one of Appellants' reserved issues—whether Commerce's use of a simple average for calculating the separate rate was appropriate. *Fusong Jinlong Wooden Grp. Co. v. United States*, 693 F. Supp. 3d 1302, 1306 (Ct. Int'l Trade 2024) ("*Fusong II*"). The Trade Court found Commerce's use of a simple average to be an unexplained departure from prior agency practice and remanded for Commerce to further explain or reconsider its calculation of the separate rate. *Id.* at 1311–14. While ruling on that issue, the Trade Court continued to reserve decision on certain other issues, winnowing down from its earlier list in *Fusong I*. Among Appellants' arguments, the Trade Court reserved decision on whether the separate rate was "aberrational." *Id.* at 1314. It did so because it found the issue to be "dependent" on Commerce's reconsideration (or redetermination) of the separate rate. *Id.*

At that point in the proceedings, the Trade Court reminded the parties of their opportunity to provide comments to the court following the remand, in line with the Trade Court's rules. *Id.* ("[A]ny comments to the remand results shall be due thirty (30) days following the filing of the remand results."); *see also* U.S. Ct. of Int'l Trade R. 56.2(h)(2) ("Parties may file and serve comments in opposition to the agency's remand determination within 30 days after the date of filing of the remand determination."). On May 7, 2024, Commerce released its draft remand results to interested parties and invited their commentary. *See* J.A. 18.   Commerce's redetermination, using a weighted average that accounted more heavily for Senmao's 0% rate due to its greater volume of exports, resulted in a more favorable separate rate for Appellants of 31.63%.  J.A. 20.  Having received no commentary from interested parties, Commerce adopted the draft and filed its final remand results with the Trade Court on June 7, 2024. *See* J.A. 20, 614.

On July 8, 2024, Appellants timely filed comments with the Trade Court stating that they "generally agree that [Commerce]'s final remand results complied with the [Trade] Court's instructions by using the weighted average, rather than a simple average" and that this is "consistent with the [Trade] Court's opinion [in *Fusong II*]."  J.A. 568. Appellants also stated that "using the weighted average of the mandatory respondents' rates to calculate the separate rate for the non-individually examined companies is the expected *and lawful* calculation method under the statute." *Id.* (emphasis added).  Appellants concluded their comments by "respectfully request[ing] that the [Trade] Court uphold [Commerce]'s decision" in the final remand results. *Id.*

In response to the comments of Appellants and other plaintiffs, Commerce submitted its own comments reiterating that it complied with the Trade Court's decision in *Fusong II* by recalculating the separate rate "in line with

the statute and the expected method discussed in the Statement of Administrative Action (SAA)." J.A. 571; *see* Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1 at 873 (1994). Commerce noted that "no party challenges Commerce's remand redetermination" and requested "judgment in favor of the United States." J.A. 572. No further comments followed.

With the remand results and the parties' comments before it, the Trade Court sustained Commerce's redetermination and entered judgment for the United States. *Final Decision*, 732 F. Supp. 3d at 1339. The Trade Court found Commerce's redetermination of a separate rate of 31.63% to be "in accordance with the statute and the SAA by using the expected method and relying on the volume evidence on the record to support its calculation," and it noted that "[n]one of the parties object." *Id.* at 1338. The Trade Court also stated that it "finds that the issues on which the court reserved decision in *Fusong II*, pending the Remand Results, have been rendered moot by Commerce's decision." *Id.*

Appellants timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

Before we reach the merits of Appellants' challenge on appeal, we consider whether their arguments have been forfeited. *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) ("We have regularly stated and applied the important principle that a position not presented in the tribunal under review will not be considered on appeal in the absence of exceptional circumstances."). Arguments that were not timely raised before the tribunal under review are forfeited. *See United States v. Olano*, 507 U.S. 725, 733 (1993). The same is true of arguments presented only in "skeletal or underdeveloped" form. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009).

On appeal, Appellants argue that: (1) calculating the separate rate based on Sino-Maple's AFA rate was improper; and (2) the separate rate of 31.63% does not reasonably reflect Appellants' potential dumping margins. As to the former, Appellants now acknowledge that they are not "categorical[ly]" contesting the use of AFA in the calculation of a separate rate. Oral Arg. at 10:41–52, No. 25-1196, https://www.cafc.uscourts.gov/oral-arguments/25-1196_06042026.mp3. Rather, Appellants argue that in the "circumstances of this case," Appellants' Br. 17, the use of the AFA rate resulted in an aberrational separate rate, *id.* at 13.

Thus, Appellants' arguments on appeal essentially collapse into one: the separate rate of 31.63% is allegedly aberrational.[2] But what Appellants considered aberrational was never defined. That is, Appellants never clearly argued just how high a rate would have to be for it to be considered aberrational. What is clear from this record, however, is that Appellants' arguments in these proceedings have been based on certain factual matters, and those matters continued to change, prompting the parties to refine their positions. For example, Appellants' prior challenge to Commerce's methodology in determining the separate rate depended on Sino-Maple's AFA rate (85.13%) and the type of averaging (simple or weighted). Moreover, whether the separate rate is aberrational cannot be answered without knowing the rate itself. The Trade Court's opinions reflect those fact-bound relationships, noting that its decision on Appellants' arguments was "contingent" or "dependent" on any redetermination of Sino-Maple's AFA rate or the separate rate, respectively. *Fusong I*, 617 F. Supp. 3d at 1227; *Fusong II*, 693 F. Supp. 3d at 1314.

---

[2]    Indeed, under both headings of its arguments, Appellants argue that Commerce's calculation resulted in an "aberrational" rate. Appellants' Br. 13, 25.

Appellants' reliance on their MJAR is insufficient to preserve the arguments they now make on appeal.  Not only did the relevant facts underlying Appellants' original arguments change, they changed in Appellants' favor, creating uncertainty as to whether Appellants' arguments continued to apply.  Specifically, Commerce changed its method of calculating the separate rate from a simple average of the mandatory respondents' dumping margins to a weighted average based on the respective volumes of those respondents' exports, a method Appellants now agree is lawful.  Because the lower-rate respondent was more heavily weighted, this resulted in a decrease of the separate rate from 42.57% to 31.63%.  In relative terms, Appellants' dumping margin decreased by approximately 25%.  But Appellants acknowledged they never challenged the 31.63% rate as being aberrational before this appeal.  Oral Arg. at 7:15–53.

Given the ambiguity in Appellants' arguments that the separate rate was aberrational, without sufficiently explaining what makes that so, we decline to interpret Appellants' original arguments made in its MJAR as a broad reservation that *any* resulting separate rate could be challenged as aberrational.  Appellants' original arguments were not so developed as to support such a broad proposition.  *See Fresenius*, 582 F.3d at 1296.  And indeed, Appellants admit that the mere inclusion of an AFA rate in the calculation of a separate rate is not what makes the resulting separate rate aberrational.  What makes the rate aberrational in the "circumstances of this case," then, must depend on what the rate is.  J.A. 138; Appellants' Br. 17.

Nor is it enough for Appellants to rely on the Trade Court's statement that it "reserves decision" on the matter of whether the separate rate is "aberrational."  *Fusong II*, 693 F. Supp. 3d at 1314.  This is particularly so in light of Appellants' failure to explain to the Trade Court why or how their original arguments would be applicable to the redetermined rate, despite being afforded the opportunity

10          FUSONG JINLONG WOODEN GROUP CO., LTD. v. US

to comment on Commerce's remand results. Instead of making such a challenge, or even so much as referencing their previous arguments, Appellants signaled that they embraced Commerce's remand results, which redetermined the separate rate as a more favorable 31.63%. J.A. 568 (Appellants requesting the Trade Court to "uphold [Commerce]'s decision" in the final remand results).

In sum, the arguments Appellants raise on appeal depend on a different set of factual circumstances—a separate rate of 31.63% instead of 42.57%—from those originally argued to the Trade Court. Whatever applicability Appellants' original arguments to the Trade Court may have had to the new 31.63% rate, Appellants presented no indication to the Trade Court that Commerce's redetermination did not exhaust the matters needing adjudication. In these circumstances, where a proponent's arguments are dependent on factual circumstances that change during the proceedings, we cannot countenance the proponent's failure to indicate the alleged continued applicability of its arguments.

CONCLUSION

For the foregoing reasons, we deem Appellants' arguments on appeal forfeited, and we decline to exercise our discretion to review them. Therefore, we affirm the Trade Court's decision.

**AFFIRMED**